TRAXLER, Circuit Judge,
dissenting:
When appellants negotiated the merger of Columbia with GE Amerieom, both appellants and GE Amerieom were interested in obtaining Loral’s 47° Ku-band license. Anticipating continuing pursuit of that license, GE Amerieom agreed to pay appellants an additional ten million dollars if appellants were able to obtain a qualifying Ku-band order from the FCC by September 1, 2003. Several months after the merger, however, GE Amerieom was acquired by SES Global SA, and GE Ameri-com became SES Amerieom.
Relying on the still valid agreement of additional pay for obtaining the 47° Ku-band license, appellants continued their efforts to obtain Loral’s license and began to make progress in their discussions with Loral. Because SES Amerieom was a potential customer, Loral wanted to make sure a deal with appellants would not anger SES Amerieom and so requested assurances that SES Amerieom had no objection to the license transfer. Unfortunately for appellants, SES Amerieom was not interested at all in a 47° Ku-band license, and when appellants approached it for a statement of support to Loral, SES Amerieom stonewalled and refused to assist appellants. Without some assurance that SES Amerieom would accept the license from Loral or participate in the processing of the FCC transfer application, appellants had no chance of completing the deal with Loral. Negotiations collapsed and appellants brought this suit against SES Amerieom.
In my view, appellants presented sufficient evidence to create a genuine issue of material fact as to causation. Four major hurdles evolved that appellants had to *173 clear in order to obtain Loral’s license: (1) willingness of Loral to sell, (2) agreement on price, (3) FCC approval of license transfer, and later (4) bankruptcy court approval.
Appellants’ discussions with Loral’s chief operating officer confirmed Loral’s interest in selling. Although no specific sales price was agreed upon, an opening offer had been made by appellants, and Loral was keeping the door open for further negotiations. Loral was not using the 47° W.L. Ku-band license and the negotiations were occurring at a time when Loral was selling off assets in an effort to raise cash.
As to the necessary FCC approval, appellants provided a report from an expert in the communications field that it was “virtually certain” the Commission would have approved the transfer (J.A. 1109) and a bankruptcy expert gave a statement that “there is no reason why the [bankruptcy] court would not have considered and quickly approved the sale_” (J.A. 1159). While these approvals would have to be obtained quickly, when I view the evidence in the light most favorable to appellants, I see no overarching impediment to their being had in a timely fashion.
Loral never used the license and went into bankruptcy. No one ever bought the license at a bankruptcy sale. I think the inferences are reasonable that Loral needed money and appellants were the only ones genuinely interested in buying the license. The only thing apparently preventing a transfer of the license was the refusal of SES Americom to indicate its approval. This, in my judgment, is sufficient to show that SES Americom’s refusal to cooperate caused the loss to the appellants.